**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ERIC THOMPSON,                                              Case No. 1:12-cv-992

            Plaintiff,                                 Dlott, J.
                                                            Bowman, M.J.

     v.

JASON JOSEPH,

            Defendant.


**REPORT AND RECOMMENDATION**

**I. Background**

Plaintiff, presently incarcerated at the Toledo Correctional Institution and proceeding *pro se*, filed suit in December 2012 against Corrections Lieutenant Jason Joseph, alleging that Defendant used excessive force during an incident that occurred when Plaintiff was housed at the Ohio State Penitentiary.[1]  Plaintiff's complaint alleges that he

> was assaulted by an Lt. Jason Joseph who works at the prison.  This was an intentional, racially motivated act.  On 7-21-12 Jason Joseph sprayed chemical mase [sic] in my face and body for no reason.  This assault happened in Cell K-1-21 next to a video, audio camera – To cover up [the] assault Lt. Jason Joseph then lied in a Conduct Report staeting [sic] "I Eric Thompson…attempted to spit on him Lt. Jason Joseph."  In fact 7-21-12 Lt. Jason Joseph was on [the] range K-1-21 to see a inmate Timothy Bozeman …for supposely [sic] spitting at a Officer Webb.

(Doc. 3 at 5).  In addition to these unsworn allegations, Plaintiff has attached as an exhibit to his complaint the "declaration" of another inmate who allegedly witnessed the

---

[1]Plaintiff has not updated his address with this Court; therefore the docket sheet continues to reflect his residence as the Ohio State Penitentiary.  However, Defendant has represented that Plaintiff currently is

"assault."

Plaintiff's motion to proceed *in forma pauperis* was granted by this Court, and Defendant was thereafter served with the complaint.  Through counsel, Defendant filed an Answer and engaged in discovery.  Following the completion of discovery, on January 21, 2014, Defendant filed a motion for summary judgment.  (Doc. 21).  Plaintiff filed a response in opposition, to which Defendant has filed a reply.  (Docs. 23, 24). The undersigned now recommends that Defendant's motion be granted.

## II. Analysis

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49.  The mere existence of a scintilla of evidence to

---

housed at ToCI, a fact confirmed by reference to www.drc.ohio.gov/OffenderSearch/details.aspx.

support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party.  *Id*. at 252.

### B.  Defendant's Motion

Defendant seeks judgment as a matter of law based upon the following arguments: (1) there is no *genuine* issue of *material* fact; (2) Plaintiff's assault claim is not cognizable in federal court; (3) the Eleventh Amendment bars any claims against Defendant in his official capacity; (4) Defendant is entitled to qualified immunity in his individual capacity; and (5) Plaintiff's claims are barred by the doctrine of *Heck v. Humphrey*.  Defendant's arguments are persuasive, and will be discussed *in seriatum*.

### 1.  Undisputed Facts

Plaintiff's signed but unverified complaint alleges that while Plaintiff was housed in his cell on July 21, 2012, Defendant sprayed mace at him for "no reason" other than Defendant's racial prejudice.  Defendant does not deny spraying a chemical agent at Plaintiff while Plaintiff was housed in his cell.  However, Defendant has produced evidence in support of his motion that the type of chemical agent used was Oleoresin Capsicum ("O/C" or "pepper") spray, as opposed to chemical "mace."  Although the precise type of chemical agent used is not technically a material fact, the undersigned finds based on the record presented that there is no genuine dispute that O/C spray was used during the incident.

Defendant further has offered evidence that contradicts the allegation in the complaint that the use of force was for "no reason," offering documentation that the spray was used by Defendant in direct response to the combination of Plaintiff's verbal threat to spit on Defendant, and actions taken by Plaintiff in furtherance of that threat.

The full context of the incident that forms the basis of Plaintiff's lawsuit can only be understood by reference to an antecedent incident that occurred between a different correctional officer and an inmate housed next to Plaintiff.  Defendant has submitted uncontested evidence concerning that earlier incident, which occurred between Inmate Bozeman and Correctional Officer ("C/O") Paul Webb.

At approximately 4:29 p.m., immediately prior to the incident between Plaintiff and Defendant, C/O Webb was walking on the cell block.  Inmate "B" [elsewhere identified as Bozeman] responded with profanity to C/O Webb's inquiry about what he wanted for dinner.  The gist of Inmate Bozeman's response reflected that he was upset with C/O Webb for having previously confiscated contraband pictures.  Following a heated verbal exchange, during which C/O Webb repeatedly advised Inmate Bozeman to "calm down," Inmate Bozeman retorted, "F--- you and spit in my [Webb's] direction."  In response, C/O Webb "administered a burst of O/C [pepper] spray to allow myself to get off the range without assault."  (Doc. 21-3).   Immediately after that first incident between Webb and Bozeman, C/O Webb left the range to complete required paperwork.

In the meantime, in response to C/O Webb's report, Officer Joseph and two other officers (not Webb) were assigned to return to the cell block to remove Inmate Bozeman and transport him to segregation.  Defendant Joseph carried a can of pepper spray as well as handcuffs in order to accomplish that task.  At approximately 4:42:51 p.m.,[2] as Defendant Joseph entered the cell block and proceeded toward Inmate Bozeman's cell, Plaintiff Thompson yelled out that

---

[2]The time shown on the videotaped record at which Defendant enters the cell block area.

> [I]f we were going to take "his dude" into custody then we would have to take him as well.  At that time Inmate Thompson spit out the front of his cell in my direction.  I immediately responded with a burst of O/C into his cell in order to cause Inmate Thompson to back away further into his cell in the event that he attempted to spit at me again, and/or to prevent him from spitting at me again.

(Doc. 21-11, Affidavit of Joseph; *see also* Docs. 21-4; 21-7 at 3-5, 10).    The record reflects that after this second incident on the same cell block, Inmate Thompson was directed to "cuff up," complied with that request without protest, and was escorted to segregation together with Inmate Bozeman.  No force other than the brief use of the O/C spray was employed by Defendant.  The video record of the incident shows Defendant Joseph turning with a look of apparent surprise toward Plaintiff, and triggering the canister of pepper spray while it was still at his right hand side, below waist level.  There is no suggestion from the video that Defendant aimed the spray into Plaintiff's face, or that he sprayed for any longer than a second or so.  Plaintiff does not challenge his subsequent removal from the cell in handcuffs, or any other action subsequent to the use of the pepper spray.

Almost immediately after the incident and at his request, Plaintiff was transported for examination by a nurse.  He informed the nurse that he was having "complications of breathing."  However, the examining nurse described his respiration as "regular and easy," and noted no signs of physical distress.  There was also no sign that the pepper spray had come into contact with Plaintiff's skin, which was unblemished.  The only visible effect of the spray was some redness (without swelling) in Plaintiff's eyes, to which he was advised to apply cold compresses.  (Doc. 21-7 at 7).    Since no other treatment was required, Plaintiff was discharged back to segregation.

Plaintiff was charged with Rules violations based upon the spitting threat.  The

specific violations with which he was charged were Rule 60, defined as "Attempting to commit; aiding another in the commission of; soliciting another to commit; or entering into an agreement with another to commit any of the above acts, " and Rule 6, defined as "throwing, expelling, or otherwise causing a bodily substance to come into contact with another." (Doc. 21-11 at 3, n.1).  On July 25, 2012, Plaintiff expressly waived the right to request any witnesses at his RIB hearing on those violations. (Doc. 21-4 at 4). At the hearing that same day, Plaintiff provided a statement in which he denied spitting "at him." (Doc. 21-4 at 6).  However, up until he filed his response in opposition to Defendant's motion in this Court, Plaintiff never denied making the verbal statements set forth in contemporaneous documents such as the Conduct Report, and as charged at the hearing.  Notably, Plaintiff's statement at his RIB hearing does not deny either "attempting" to spit, or spitting out of his cell  - he merely denies spitting "at" Defendant. In convicting Plaintiff of the offenses with which he was charged, the Rules Infraction Board stated:  "The Board believes that Thompson *attempted* to spit on Lt. Joseph." (Doc. 21-4 at 9, emphasis added).

Plaintiff has failed to put forth sufficient evidence to genuinely dispute any of the material facts supported by the record submitted by Defendant.  The only "dispute" with the Defendant's factual account of the incident is contained in Bozeman's alleged "Declaration" attached to Plaintiff's complaint, and in the body of Plaintiff's memorandum in opposition.  However, neither of those documents is sufficient to overcome Defendant's motion for summary judgment.

The "Declaration" attached to Plaintiff's complaint is dated July 29, 2012 – four days after the RIB hearing at which Plaintiff waived his right to witnesses. The

Declaration, like Plaintiff's initial complaint, is unsworn, does not state that it is made on personal knowledge, and is not attested to by a notary or other witness.  *See* Rule 56(c)(4), Fed. R. Civ. P.  It allegedly bears Bozeman's signature but contains no indicia of authenticity or reliability concerning the date and signature.  On July 30, 2012, Plaintiff appealed his RIB violation but did not identify Bozeman as a witness at that time, or in any subsequent administrative appeal, even though he obviously would have been aware of his potential witness's July 29, 2012 "Declaration."  Plaintiff's RIB conviction was affirmed throughout the administrative process.  (Doc. 21-4 at 2-3).

One of the allegations in the Declaration is flatly contradicted by other record evidence. Specifically, in relating the account the Declarant states that four officers including Officer Webb were present during the incident between Plaintiff and Defendant, but multiple records and a video-recording conclusively show that only three officers were present at the time, and that Officer Webb was not among them.  (Doc. 3 at 8; 23-1 at 26).  Additionally, although the Declaration by Bozeman asserts that Plaintiff was sprayed "for no reason," the video record confirms that Inmate Bozeman was inside his closed adjacent cell at the time, and would have had (at best) a very limited view of whether or not Plaintiff spit out of his cell in an action similar to Bozeman's own action approximately ten to fifteen minutes earlier in time.  Further, to the extent that the Declaration merely expresses a personal view that the use of pepper spray was for "no reason," the Declarant does not deny that Plaintiff engaged in (at the least) verbal threats.  Pursuant to Rule 56(c), therefore, the undersigned concludes that the Declaration is not sufficient under Rule 56(e) to create a genuine issue of material fact or to overcome the evidence produced by Defendant in favor of summary judgment.

The other document offered to refute Defendant's otherwise uncontested version of events is Plaintiff's memorandum in opposition to Defendant's motion.  For the first time in that memorandum, Plaintiff attempts to create an issue of fact by denying that he made any "contemporaneous statements that attempted, solicited, aided and/or agreed with others" to spit out of his cell.  Plaintiff alleges in his responsive memorandum "under penalty of perjury" that Defendant "did intentionally, unlawfully, and unnecessarily spray the Plaintiff in the face and body with chemical mace for no reason other than Plaintiff's ethnicity." (Doc. 23 at 3, ¶6).  Also for the first time in opposition to summary judgment, he denies ever spitting at any time on July 21, 2012.  He now states that at the time of the incident, he was doing no more than "paying sole attention to a movie playing on the range when he, Plaintiff, was sprayed" by Defendant.  (Doc. 23 at 4).

The undersigned simply cannot reconcile these new allegations with the video record of the incident.  (*See* Defendant's Exhibit C-1, Camera 14 at 4:44:27).  Moreover, Plaintiff's argument that the use of the pepper spray was excessive because there were "lesser avenues of resolution available to the Defendant" in responding to Plaintiff's behavior is inconsistent with his new allegation that he was merely watching a movie. (*Id.* at 5).  Plaintiff's attempt to impeach Defendant's evidence by pointing to C/O Webb's conduct report concerning his interaction with Bozeman also fails to overcome Defendant's strong support for judgment in his favor.  Plaintiff argues that Webb "never mentions Plaintiff aiding an I/M Timothy Bozeman. . . ."  However, the absence of Plaintiff's name from C/O Webb's various reports is unsurprising, given that the incident between Plaintiff and Defendant occurred ten to fifteen minutes later, at a time when

Webb was not present on the cell block.

In short, Plaintiff's response to Defendant's motion fails to create a "genuine" issue of "material" fact, because the limited evidence that he offers either does not materially contradict the records offered by Defendant, or is not of a character "such that a *reasonable* jury could return a verdict" in his favor.  *Anderson*, 477 U.S. at 248 (emphasis added).

### 2.  Jurisdictional Basis for Claim

As Defendant points out, Plaintiff does not specifically set forth the legal basis for his claim.  Although the Clerk of Court classified the case for administrative purposes as a "prisoner civil rights" suit filed pursuant to 42 U.S.C. §1983, the Court has never articulated the basis for its jurisdiction, and has not to date reviewed the jurisdictional basis for Plaintiff's claim.  Nowhere in the complaint is there any reference to 42 U.S.C. §1983, or to any portion of the constitution such as the Eighth Amendment.  The complaint also fails to contain words like "excessive use of force."  The complaint does not allege that the Defendant acted under color of state law.  Plaintiff also fails to allege the capacity in which the Defendant is sued.  Rather, the complaint alleges only that Plaintiff was subjected to an "assault" by the Defendant based upon Plaintiff's race.  The Declaration attached to the complaint, allegedly signed just days after the incident, also refers to an "assault" and Plaintiff describes Bozeman as a witness to "this crime." (Doc. 3 at 7).

Defendant argues that the allegations in the complaint and attached Declaration, limited to asserting that Plaintiff was subjected to a racially motivated criminal "assault," simply do not assert a claim over which this Court may exert jurisdiction.  Rather, the

allegations plausibly set forth a state law tort claim of assault and/or battery, which is not cognizable in this federal Court.  The undersigned agrees that, to the extent that Plaintiff intended to set forth a state law claim for assault, this Court lacks jurisdiction.

At the same time, however, Defendant acknowledges that it is "plausible that Inmate Thompson's Complaint could be construed as having been brought under 42 U.S.C. §1983 alleging a violation of Cruel and Unusual Punishment under the Eighth Amendment or the United States Constitution."  (Doc. 21 at 12).  Therefore, Defendant concedes that he "was on notice that despite Inmate Thompson's inartful pleadings, the proper construction to be given to Inmate Thompson's Complaint was that he was alleging excessive force in violation of his Eighth Amendment rights." (Doc. 21 at 15).

Indeed, in his response in opposition to the pending motion, Plaintiff for the first time asserts that his claim is brought pursuant to 42 U.S.C. §1983, essentially parroting Defendant's discussion.  (Doc. 23 at 6-7).  Based upon Defendant's concession and the court's construction of similar allegations in the complaint in *Pelfrey v. Chambers*, 43 F.3d 1034, 1035 (6th Cir. 1995), the undersigned agrees that the complaint is properly construed as filed pursuant to 42 U.S.C. §1983,[3]  and as alleging an unprovoked assault in violation of the Eighth Amendment.

### 3.   Dismissal of Official Capacity Claim

Having determined that the jurisdictional basis for the claim arises under §1983, the Court turns to the issue of whether Defendant is sued in his official or individual capacity.  The Sixth Circuit applies a "course of proceedings test" in cases, like this one,

---

[3]In *Pelfrey,* the plaintiff apparently had "filed this action under 42 U.S.C. §1983."  *Id.* at 1035.  By contrast, the complaint in this case articulates no clear basis for jurisdiction.

in which the capacity of the defendant is not specified in the complaint.  *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001)(*en banc*).  In light of the fact that Defendant asserted qualified immunity in his Answer, the undersigned construes the complaint as asserting claims against Defendant in both his official and individual capacities.  However, Plaintiff's claims for monetary damages are barred by the Eleventh Amendment.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989*); Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  The undersigned therefore will recommend the dismissal of all claims for monetary damages, to the extent that Plaintiff's complaint is construed as brought against Defendant in his official capacity.

### 4. Qualified Immunity

Defendant seeks the dismissal of any construed Eighth Amendment claim brought against him in his individual capacity on the basis of qualified immunity.  The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages."  *See Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (internal quotation omitted).  Thus, a governmental official performing discretionary functions will be entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct.  *Pearson v. Callahan*, 129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity,

the official must first show that he acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000).  Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right.  *Id.*  Here, Plaintiff has made no claim that Defendant was acting outside his authority, so the burden falls on Plaintiff to overcome the qualified immunity defense.

For the reasons discussed above, Defendant argues persuasively that the only genuinely disputed fact is whether or not Plaintiff actually spit ***at*** Defendant.  Defendant asserts that, in the context of the undisputed facts in the record, the issue of whether or not Plaintiff spit "at" Defendant is not a genuine issue of *material* fact.  Defendant is entitled to summary judgment because Defendant did not violate any clearly established Eighth Amendment right by using pepper spray under the circumstances presented. Namely, given the context of the prior spitting incident with Inmate Bozeman, it was reasonable for the officers who were about to transport Inmate Bozeman to segregation to perceive Plaintiff's provocative remarks that they would have to "take me too," as a threat to engage in the same behavior (spitting).  Defendant attests that he believed that Plaintiff was spitting "at" him, and the Rules Infraction Board found that Plaintiff "attempted" to spit at Defendant.

Up until the filing of his response in opposition to Defendant's motion, Plaintiff denied only actually spitting <u>at</u> Defendant.  Nowhere in the prior administrative record did he deny spitting out of his cell or engaging in the verbal provocation documented by the officers.  In the unsworn complaint filed in this Court Plaintiff alleges only that

12

Defendant "lied" by stating in the Conduct Report that Plaintiff "attempted to spit **on** him," a factual scenario that is *not* incompatible with spitting in another direction. Considering the evidence as a whole, the undersigned finds as a matter of law that Defendant is entitled to qualified immunity, because no reasonable officer would have understood that it violated the Eighth Amendment to reactively aim chemical spray at Plaintiff in his cell for less than two seconds (based on the videotape record),[4] in order to force a threatening inmate to retreat and restore order.  *See generally Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992)(suggesting that qualified immunity would be appropriate for use of mace to compel compliance with order, because neither the Supreme Court nor any court of appeals had clearly held that use of a chemical agent is a per se violation of Eighth Amendment when a prisoner is locked in his cell).

An Eighth Amendment claim requires a prisoner to satisfy both an objective component, which requires the pain that is inflicted to be "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official.  *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(citations omitted).  The Supreme Court has clarified that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to prove the objective component of an Eighth Amendment claim involving cruel and unusual punishment, *see Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010).  On the other hand, the extent of injury is one factor to be considered in determining whether the assertion of force "'could plausibly have been thought necessary' in a particular situation."  *Id.,* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  Thus, not "every malevolent touch by a prison guard

---

[4]The DVD of the incident submitted to this Court does not contain audio, but the undersigned's review of

13

gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9, (1992). The Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins*, 130 S. Ct at 1178 (quoting *Hudson*, 503 U.S. at 9).

As the Supreme Court has explained, "whenever prison officials stand accused of using excess physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*; whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins v. Gaddy,* 130 S. Ct. at 1178-1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts."). Thus, "'[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams v. Curtin*, 631 F.3d at 383 (*quoting Hudson*, 503 U.S. at 9).

In order to prevail on his construed Eighth Amendment claim in this case, Plaintiff must prove not only that the use of the O/C spray was objectively unreasonable, but that it was applied "maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d at 383 (quoting *Hudson,* 503 U.S. at 6 (internal quotation marks omitted)). "Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id.* (quoting *Whitley,* 475 U.S. at 321).  Given the evidence produced by

the video comports with the facts attested to by Defendant.

Defendant concerning the circumstances under which the pepper spray was deployed, the undersigned concludes as a matter of law that Plaintiff has failed to demonstrate either the objective or the subjective elements of his claim. In other words, in context, the brief use of spray employed by Defendant was arguably so objectively a "*de minimis*" use of force as to fail to demonstrate an Eighth Amendment claim.

In so concluding, the undersigned finds *Williams v. Curtin* to be distinguishable. There, the Sixth Circuit reversed a trial court's *sua sponte* dismissal of a prisoner civil rights suit for failure to state a claim pursuant to its screening authority under the Prison Litigation Reform Act, 42 U.S.C. §1997e, *et seq.* The district court had held that the plaintiff's allegations, that a prison guard "assault team" had improperly sprayed him with a chemical agent, failed to state a constitutional claim, reasoning that the Eighth Amendment required more than a *de minimis* injury under Sixth Circuit law. The trial court filed its decision in 2009. In 2010, the Supreme Court clarified in *Wilkins v. Gaddy* that a *de minimis* injury in fact can be sufficient to support an Eighth Amendment claim, if the force that was used was not "*de minimis*" but instead was excessive. Since *Wilkins*, courts have been careful to focus on the amount of force applied in context, rather than the amount of injury that has resulted. Reversing the district court just months after *Wilkins*, the Sixth Circuit relied heavily on that decision in holding that the district court had erred by relying on the *de minimis* nature of the injury, rather than focusing on the amount of force.

The Sixth Circuit's holding in *Williams* was narrow, in that the appellate court posited only that the claim was "plausible" and should not be dismissed *sua sponte* for failure to state a claim under PLRA screening standards. The court held that the

alleged facts, "if true, *may* permit a finding that the use and/or amount of force was unnecessary, which *may suggest* that [defendants'] actions were not taken in good faith and were *perhaps* motivated by the malicious purpose of causing harm."  *Id.* at 384 (emphasis added).  In other words, even with only plaintiff's allegations, the Sixth Circuit was careful not to hold anything more than that the allegations were sufficient to survive the low threshold bar of *sua sponte* screening, thereby requiring defendants to file an answer or other responsive pleading.  The Sixth Circuit's cautious language was appropriate because of the procedural posture of that case.  The narrowness of the holding also leaves room for the reiteration of the standard in *Wilkins v. Gaddy* that:

> "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid.* (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid.* [*Hudson,* 503 U.S. at 9] (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

*Id.*, 559 U.S. at 37-38.  Thus, *Wilkins* reiterated that there is such a thing as a *de minimis* use of force that would "almost certainly" be insufficient to state an Eighth Amendment claim.  *Id.*

Unlike in *Williams,* the undersigned is not reviewing the complaint on the basis of an initial screening, but on summary judgment, and is well aware of the legal standard applicable to such claims as clarified in *Wilkins*.  Additionally, in *Williams v. Curtin,* the plaintiff's allegations – liberally construed - were deemed to be "plausible" enough to state the objective element of an Eighth Amendment claim primarily because of the liberal construction given to his allegations on screening. The plaintiff's complaint stated that he had been directed to "pack up" his cell, he did not admit that he disobeyed that

16

order.  Instead, the complaint alleged that, when instructed to "pack up," the plaintiff merely inquired "What for, sir?"  In response to his polite query, he alleged he was immediately accosted by an "assault team" who sprayed him with a chemical agent for an indeterminate length of time, during a "violent extraction" from his cell, causing "some degree of injury" including coughing and a "shortage of oxygen."  By contrast, the evidence submitted by Defendant on summary judgment in this case reflects not just *de minimis* injury, but more importantly, the type of force that, in context, itself appears to be so *de minimis* as to be insufficient to prove the objective element of Plaintiff's claim.  Unlike the facts alleged in *Wilkins*, there was no "assault team" or "violent extraction."  Plaintiff complains only of an incident in which a single guard can be seen on videotape turning reactively, and very briefly spraying Plaintiff with pepper spray.  Plaintiff was given prompt medical attention and required no formal treatment.

To be clear, when pepper spray or some other chemical agent is used against a prisoner, that use of force might support the objective component of an Eighth Amendment claim when combined with other force (i.e., a "violent extraction"), or if the spray was used for an excessive length of time, employed in some obviously malicious manner, or under circumstances that demonstrate a more objectively significant incident.  *See e.g., Freeman v. Collins*, 2009 WL 414325 (S.D.OH Feb. 17, 2009)(denying qualified immunity to officer who sprayed inmate with mace based on disputed issues; inmate had medical documentation prohibiting use of chemical agents, and allegedly was denied medical treatment after the incident).  However, on the record presented in this case, where it is clear that some manner of threat by Plaintiff occasioned the briefest reactive use of pepper spray by a single prison guard, with no

17

other force used by that guard or by anyone else, the undersigned concludes that the force used was akin to a "push or shove" that causes "no discernible injury" and that falls short of what is required to state a valid Eighth Amendment claim.

To the extent that a reviewing court may disagree and conclude that the objective element of an Eighth Amendment claim is *automatically* satisfied at *any* time that pepper spray is used against a prisoner, the Defendant would still be entitled to qualified immunity based upon Plaintiff's inability to prove the subjective component of his Eighth Amendment claim.  In *Williams v. Curtin*, the Sixth Circuit suggested that the plaintiff had sufficiently alleged that component because the only facts before the court on screening were the inmate's allegations that he had not disobeyed any order, but had politely asked "What for, sir?" when he was assaulted by a "team."  The appellate court held only that those facts "*may suggest* that Respondents' actions were not taken in good faith and were *perhaps* motivated by the malicious purpose of causing harm."  *Id.* at 384 (emphasis added).

Again, the limited alleged facts and narrow review on initial screening contrast significantly with the record evidence submitted by Defendant on summary judgment in this case.  Although Plaintiff alleged in his complaint that the use of pepper spray was solely based on Plaintiff's race, Plaintiff has offered no evidence to support that single conclusory allegation.  No reasonable jury could find subjective malicious intent here. The context of the prior incident with Bozeman, the fact that Plaintiff complied with the directive to "cuff up" and be transported to segregation immediately after the incident, and the fact that he was promptly administered medical attention, add to the wealth of evidence documenting a lack of malicious intent by the Defendant here.  *See generally*

*Higgs v. Sanford*, 2009 WL 805121 at *4 (W.D. Ky. March 25, 2009)(granting summary judgment to Defendant who used short burst of pepper spray to control inmate who did not respond to verbal command, noting that prompt medical attention after the incident "suggests that Defendant Sanford's force was "applied in good faith.");  *Combs v. Wilkinson*, 314 F.3d 548, 557 (6th Cir. 2002)(affirming summary judgment to officer who used chemical agent against prisoner in haste, in order to restore order); *White v. Fowler*, 881 F.2d 1078 (Table, 6th Cir. Aug. 8, 1989)(granting summary judgment to officer who sprayed mace into prisoner's face, even though inmate was shackled at the time, based on evidence that action was taken to restore discipline and security on a bus).

### 5. *Heck v. Humphrey*

Plaintiff was convicted of the disciplinary offenses with which he was charged. Until he filed his memorandum in opposition in this Court asserting "under penalty of perjury" that he never made any statements or spat in any direction during the incident on July 21, 2012, Plaintiff had never before so comprehensively denied all facts underlying his RIB conviction.  Rather, in the course of the administrative proceedings, he denied only spitting "at" Defendant.  The undersigned has above explained the reasons for rejecting Plaintiff's late-breaking account of the facts.  However, to the extent that a reviewing court believes that Plaintiff's statements in his memorandum in opposition create a "genuine" issue of "material" fact, the undersigned alternatively recommends that summary judgment be granted to Defendant because Plaintiff's requested relief would undermine the validity of his RIB conviction.

In *Heck v. Humphrey,* 512 U.S. 477 (1994), the Supreme Court held that a

plaintiff's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in his favor would "necessarily imply" the invalidity of his conviction or sentence, unless he can demonstrate that the sentence or conviction has previously been invalidated. The Supreme Court later held that *Heck* is not *automatically* implicated by a suit that impacts a conviction in a prison disciplinary proceeding, absent evidence of the impact on the length of a prisoner's sentence. *See Muhammad v. Close,* 540 U.S. 749 (2004)(*per curiam*). However, in *Bell v. Wilkinson,* 145 Fed. Appx. 169, 170 (6th Cir.2005), the Sixth Circuit distinguished *Muhammad,* and held that *Heck v. Humphrey* might bar suit when a prisoner's RIB convictions impacted the duration of his confinement, as occurs under Ohio law.[5]  *See also Clay v. Henderson County Jail*, 2010 WL 3341478 (W.D. Ky. Aug. 24, 2010)(granting summary judgment to Defendants in case involving use of pepper spray in response to inmate's failure to comply with order, noting Plaintiff had been convicted of offense in prison disciplinary proceeding); *McMillan v. Fielding,* 136 Fed. Appx. 818 (Sixth Cir. June 7, 2005)(holding that a prisoner may not use §1983 to challenge an RIB hearing's validity "or the conduct underlying the disciplinary conviction"); *Jennings v. Mitchell*, 93 Fed. Appx. 723, 725 (6th Cir. March 12, 2004)(granting summary judgment to Defendants based upon video evidence that prisoner was disobeying direct order prior to use of pepper spray, but holding alternatively that "Jenning's Eighth Amendment claim lacks merit because it is barred by…*Heck v. Humphrey*" in light of RIB conviction).

---

[5] *Williams v. Curtin* footnotes the plaintiff's submission of documents with his complaint that reflect an unsuccessful appeal of a related disciplinary conviction. Given the fact that *Williams* arose under Michigan and not Ohio law, and its unique procedural posture as a PLRA screening decision, it is unsurprising that the court did not address the potential impact of *Heck v. Humphrey.*

### III.  Conclusion and Recommendation

For all the reasons discussed herein, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 21) be **GRANTED**, that all claims be dismissed, and that this case be closed.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ERIC THOMPSON,                                    Case No. 1:12-cv-992

                    Plaintiff,                    Dlott, J.
                                                  Bowman, M.J.
          v.

JASON JOSEPH,

                    Defendant.


**NOTICE**

 Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).